IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



CHARLES LEE BRICE,

        Petitioner,

v.                                                                                                      Criminal No. 2:06-cr-154-1

UNITED STATES OF AMERICA,

        Respondent.

### *MEMORANDUM OPINION & ORDER*

Before the Court is Charles Lee Brice's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 64. The Government opposed the motion and Petitioner replied. ECF Nos. 69, 73. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On November 14, 2006, Petitioner were named in a twelve-count Indictment returned by a Grand Jury charging Petitioner with Sexual Exploitation of a Minor, in violation of 18 U.S.C. 2251(a) and 2251(e) (Count One); Transporting Child Pornography, in violation of 18 U.S.C. 2252A(a)(1) (Counts Two through Eleven); and Possession of Material Containing Child Pornography, in violation of 18 U.S.C. 2252A(a)(5)(B) (Count Twelve). ECF No. 1. On January 11, 2007, a eighteen-count Superseding Indictment was returned by a Grand Jury charging Petitioner with Enticement of Minor to Engage in Illegal Sexual Acts, in violation of 18 U.S.C. 2422(b) (Counts One through Five); Interstate Travel to Engage in Illicit Sexual Activity, in violation of 18 U.S.C. 2423(b) (Counts Two and Three); Sexual Exploitation of a Minor, in violation of 18 U.S.C. 2251(a) and 2251(e) (Count Four); Transporting Child Pornography, in violation of 18 U.S.C. 2252A(a)(1) (Counts Six through Fifteen); Possession of Material

Containing Child Pornography, in violation of 18 U.S.C. 2252A(a)(5)(B) (Counts Sixteen through Eighteen). ECF No. 15. On February 27, 2007, Petitioner plead guilty to Count Four of the Superseding Indictment. ECF Nos. 20, 21. According to his Presentencing Report ("PSR"), Petitioner did not accept responsibility for his actions because, although he admitted having had a romantic and sexual relationship with the minor victim, he denied knowing that she was underage until after he had engaged in sexual intercourse with her on two occasions. ECF No. 60 at ¶ 27. In his PSR, Petitioner reported his as overall health good and noted no history of any serious or chronic medical conditions or illness. *Id.* at ¶¶ 42-44 Petitioner was assessed a total offense level of 40, a criminal history category I, and a recommended guideline provision of 292 to 360 months imprisonment. *Id.* at ¶¶ 70-71. On June 1, 2007, the Court imposed a sentence of 360 months imprisonment followed by life term of supervised release. ECF No. 30. Petitioner's current projected release date is July 4, 2032 and he is currently incarcerated at Fort Dix FCI located in New Jersey.

On December 10, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 56. On February 9, 2021, Petitioner filed the motion through counsel. ECF No. 64. The Government opposed the motion and Petitioner replied. ECF No. 69. 73.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. At age 41, Petitioner argues that his underlying conditions place him at high risk for serious illness or death if he contracts the COVID-19 virus. *Id.* Notably, on November 20, 2020, Petitioner tested positive for COVID-19 and has since recovered. Accordingly, Petitioner requests that this Court grant him compassionate release and allow him to begin supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing

Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification

under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion with the Court. On November 1, 2020, Petitioner submitted a Request for Reduction in Sentence Form to the Warden at Fort Dix FCI. ECF No. 68; *see also*, ECF No. 64 at Exhibit 5. On November 23, 2020, the Warden denied Petitioner's request. *Id.* Petitioner filed his Motion for Compassionate release on December 10, 2020. *Id.* Thus, more than 30 days passed since Petitioner filed his request with the Warden

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen,* No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. According to Petitioner's medical records, at age 41, he suffers from anxiety,

5

depression, glaucoma, myopia, hypertension (commonly known as hyperlipidemia), anemia, and obesity (BMI >26). ECF No. 64 at Exhibit 4 (Sealed); *see also* ECF No. 65. Furthermore, as of December 2019, Petitioner's medical records show that he is prescribed medication to control his high blood pressure, hypertension, and other conditions. *Id.* According to the Centers for Disease Control and Prevention, individuals with hypertension and obesity might be at an increased risk for severe illness if they contract COVID-19.[1] Here, the Court does not need to speculate about Petitioner's risk because already contracted COVID-19. On November 20, 2020, Petitioner tested positive for COVID-19. ECF No. 64 at Exhibit 4 (Sealed). As a result, Fort Dix FCI isolated Petitioner and monitored his symptoms. *Id.* According to his medical records, Petitioner was initially asymptomatic because he did not have any of the following symptoms: cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, nausea or vomiting. *Id.* Later, however, Petitioner reported some symptoms which included loss of taste and smell, fatigue, chills and sweats, though he never had a fever. *Id.;* see also, ECF No. 64 at 9. By December, Petitioner recovered and returned to work without any issues. Therefore, Petitioner has not provided evidence showing that he is at high risk for serious illness due to COVID-19 which warrant extraordinary circumstances.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. Critically, Petitioner already contracted COVID-19 at Fort Dix FCI. As of March 19, 2021, the BOP has reported a total of 13 current (1812 recovered, 1 death) positive cases of COVID-19 for inmates and 40 current (47 recovered) for staff at Fort Dix FCI.[2] Moreover, increased testing

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov,* https://www.bop.gov/coronavirus/

is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, and most critically, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's egregious conduct for his underlying offense remain unchanged. According to his PSR, on May 23, 2006, a Federal Bureau of Investigation (FBI) agent in Tulsa, Oklahoma conducted an investigation into the distribution of child pornography online. ECF No. 60 at ¶ 7. Using a file-sharing program, "LimeWire," the agent downloaded 11 images and 4 videos of child pornography from an Internet Protocol (IP) address 70.160.20.84. *Id.* After FBI agents determined that the IP address belonged to Petitioner, the FBI executed a search warrant of his home. *Id.* at ¶ 8. At that time, Petitioner provided the agents information about the computers in the home, and specific e-mail addresses and screen names that had been assigned to him. Initially, Petitioner denied searching for child pornography; however, eventually he admitted to conducting searches for child pornography and possessing images (10 or 15 at a time) and videos of child pornography. *Id.* Petitioner also admitted to having an online

---

[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

relationship with a female (Minor A), who he claimed told him she was 18 but was, in fact, 14 years old. *Id.* at ¶ 9. At the time Petitioner was 24 years old. *Id.* He also admitted that he visited Minor A in Tennessee on three occasions. *Id.* During the first visit, Petitioner said, he and Minor A engaged in kissing and petting but did not engage in sexual intercourse. *Id.* However, he admitted that on the subsequent visits they did engage in sexual intercourse and that he had nude pictures of Minor A, which he claims he took before he knew she was under 18. *Id.* At the time of each of the three visits, the minor female was only 14 years old. Petitioner revealed that the agents would find nude pictures of the minor female on a computer seized from the common living room area of his residence, and indicated that he took the photographs before he was aware the victim was under the age of 18. During the search, two computers were seized. Forensic examination of the devices revealed nude photographs of the minor female, including several nude photographs, and emails where the minor victim stated that she was only 14 years old. *Id.* at ¶¶ 10-11. During the search, agents also seized a "Curious George" tin which contained maps to Tennessee, photographs of the minor female, two receipts for hotel rooms, articles of clothing and underwear worn by the minor female, a condom, a pornographic magazine, and a copy of an on-line chat between the defendant and the minor female. *Id.* at ¶ 12. Petitioner also maintained a list of things he wanted the minor female to do during one of their visits. Lastly, the tin contained a letter Petitioner wrote to the parents of the minor female, noting that he was 25 years old, acknowledging that the minor female was 10 years younger than he, and that "it is against the law to be with her at such a young age…" Petitioner's knowledge of the minor female's age was also revealed in a log kept by Petitioner, containing the minor female's statistics, including her age and that she was a 10th grade student. *Id.* at ¶¶ 12-14. Petitioner went as far as contacting the minor child's parents for their permission to have sexual relations with their daughter. *Id.* at ¶ 15. Ultimately, Petitioner

did not accept responsibility for his criminal conduct because, although he admitted having had a romantic and sexual relationship with the minor victim, he denied knowing that she was underage until after he had engaged in sexual intercourse with her on two occasions. *Id.* at ¶ 27.

Although Petitioner does not have an extensive criminal history, his criminal record does show a pattern for criminal acts against minors. For example, in 2001, at the age of 21, Petitioner was convicted of Disorderly Conduct and Distribution of Harmful Material. Records regarding these charges indicate that Petitioner approached a 15-year-old girl, showed her a picture of a nude woman and screamed at the girl to help him find the woman in the picture. *Id.* at ¶ 31. When the victim ran, Petitioner followed her, screaming at her to help him find the woman in the picture. During the investigation of the offense, officers searched a gym bag belonging to Petitioner, which contained pornographic magazines, a camera, Petitioner's wallet containing six photographs of nude women, and a journal written by the Petitioner, with an entry concerning his involvement in the offense. *Id.* Additionally, the journal contained entries describing him and his then 8-year-old sister engaging in sexual intercourse. *Id.* Therefore, given the seriousness of Petitioner's crimes and criminal history, the Court finds that Petitioner's release would not promote the respect for law, provide adequate deterrence, or protect the public.

On the other hand, Petitioner has demonstrated some progress while in BOP custody. Notably, Petitioner has earned his GED, completed multiple educational and drug treatment programs, and has not receive disciplinary infractions in the past six months. *See* ECF No. 64 at Exhibit 5. Overall, however, the § 3553(a) factors do not weigh in his favor. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
March 24, 2021

/s/ Raymond A. Jackson
UNITED STATES DISTRICT JUDGE